**Michael Eugene BROWNWELL,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–81–0107–CR.**

Court of Appeals of Texas,
Tyler.

Nov. 24, 1982.

Mandate Issued Jan. 25, 1983.

Jay Burnett, Catherine Greene, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

McKAY, Justice.

Appellant was charged by indictment with the offense of aggravated promotion of prostitution, to which indictment appellant entered a plea of not guilty. Trial by jury was waived and the court found appellant guilty and his punishment was assessed at five years confinement. The sentence was probated.

Officers Semora and Chisholm of the Houston Police Department entered the Golden Girl Studio in Houston, and appellant was standing behind a counter. There was a cash register on the counter. Semora testified that two women, Ms. Roper and Ms. Pierre, were sitting on a couch at the end of the counter; that appellant asked if he and Chisholm had been there before, and he answered they had not. Appellant then pointed to a piece of cardboard or paper that had prices on it for sessions—contact sessions and no contact sessions—and "went over the cost for the sessions," and asked him which one he wanted. The Golden Girl Studio was known as a modeling studio "where a man can go and be modeled, clothed or nude, with a female model." The price for the contact session was $35.00 for 30 minutes with a female model in the room. Semora asked appellant if contact sessions meant they could touch the girls, and appellant said if they paid for the contact session then they could touch the girls and the girls could touch them, but they could not touch each other if they did not pay for a contact session. Both officers agreed to take the 30 minute contact session. There were pictures of girls at the counter for them to see and choose one, but

Semora chose Ms. Pierre and Chisholm chose Ms. Roper, and Semora paid appellant $70 for himself and Chisholm.

Semora said he went with Ms. Pierre upstairs to a room, and she took all her clothes off, and after he asked if he could get as comfortable as he wanted, he took all his clothes off and both of them were completely nude. After telling Pierre he did not want to paint, both of them sat down on the bed. He said, "Well, I paid for contact session, does that mean I can touch you and play with your breasts, or whatever?", and she said "sure." Semora then began fondling her vagina for 30 seconds to a minute. Pierre then removed his hand and masturbated herself for 5 to 10 minutes. She then asked Semora if he wanted a rub down; he consented and she then rubbed his back, then his chest for 5 minutes each, and she then rubbed him in the groin area and then placed her finger at the base of his penis and rubbed gently there. He fondled her breasts during this time.

After the 10 or 15 minutes of massage a voice which "sounded similar" to appellant's came over the intercom in the room asking if the customer wanted an extension. Semora then told Pierre he did not want an extension, put his clothes on, and as they were preparing to leave he asked her about a mirror next to the intercom since it did not appear to be a typical mirror. Pierre "lowered her voice real low, where I could bearly hear, and she whispered in my ear 'It's a two-way mirror.'" She said a person could look into the room from the hallway, that it was used by appellant, who she said was the manager, to look into the room if a customer stayed too long with a girl, and that he could listen on the intercom if he wanted to and learn what was happening in the room or if the girls were having any trouble. Semora then walked downstairs, met Chisholm and left.

Chisholm testified he had been with the Houston Police for four years, presently in the vice division. He said he went to the Golden Girl Studio to check out illegal prostitution activities with Semora, and that appellant was working there behind the

cash register area and there were two females there also. The conversation between Semora and appellant concerned the type and cost of sessions. Chisholm said he chose a contact session with one of the girls present who gave her name as Satin. Semora paid $70 for both of them, and he followed Satin upstairs to a room. She then told him to remove his clothes and she removed her clothes, and as they lay on the bed he asked her what did he get, and she replied he could touch her anywhere except between the legs. He then began to massage her breasts, and then when he began to massage her vagina she placed her hand over his hand and began to massage. She then grabbed his penis and began to masturbate him, and at one time she rubbed his penis over the opening of her vagina. At that time a voice was heard stating that the time was up for the session and asking if the customer wished to extend it. He said the voice appeared to be appellant's, and he told appellant he did not want to extend the session. He then got dressed, met Semora downstairs and left the location.

Appellant first complains that the evidence is insufficient to support a conviction because the acts and declarations of the two women cannot be imputed to appellant. The testimony of the two women was objected to by appellant as hearsay, and he argues that to permit such evidence as an exception to the hearsay rule there must be independent evidence of conspiracy in the record.

By his second ground of error appellant contends that the evidence is insufficient to support the finding that he owned, rented, invested in, financed, controlled, supervised or managed a prostitution enterprise. Grounds one and two will be discussed together.

Section 43.04, Tex.Penal Code,[1] provides, "(a) A person commits an offense if he knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes." Section 43.02 provides in part: "(a) A person commits an offense if he knowing-

ly: (1) offers to engage, agrees to engage, or engages in sexual conduct in return for a fee payable to the actor; or (2) solicits another in a public place to engage with him in sexual conduct for hire." Section 43.01(3) defines *"sexual contact"* as "any touching of the anus or any part of the genitals of another person or of the breast of a female 10 years or older with intent to arouse or gratify the sexual desire of any person," and § 43.01(4) provides "sexual conduct" includes deviate sexual intercourse, *sexual contact,* and sexual intercourse.

Under the former Penal Code (art. 514) aimed at prohibiting maintenance of houses of prostitution (keeping bawdy or disorderly houses) the conduct and conversations had with inmates, showing invitations to have sexual intercourse, was held (over the objection of the accused that it occurred in his absence and that there was no evidence showing his knowledge or concurrence and therefore not binding him) to be admissible on the ground it was essential to show the character of the house and the fact that it was resorted to for the purposes of sexual intercourse. *Hickman v. State,* 59 Tex. Cr.R. 88, 126 S.W. 1149, 1150 (1910).

A number of cases followed and cited *Hickman* where the offense was keeping a disorderly or bawdy house: *Finn v. State,* 60 Tex.Cr.R. 521, 132 S.W. 805 (1910); *Novy v. State,* 62 Tex.Cr.R. 492, 138 S.W. 139, 141 (1911—evidence of acts showing conduct and conversation had with inmates is admissible to show character of the place); *Dossett v. State,* 93 Tex.Cr.R. 41, 245 S.W. 439 (1922); *Claiborne v. State,* 100 Tex. Cr.R. 322, 273 S.W. 260, 261 (1925); *Bryant v. State,* 163 Tex.Cr.R. 463, 293 S.W.2d 646, 648 (1956).

In *Claiborne* it is said:

Proof of acts showing conduct of and conversations had with the inmates of the house is admissible to show the character of the place, whether the accused was present or not when such matters occurred.

---

1. Citations to section are to Texas Penal Code unless otherwise designated.

We hold that the testimony of the officers in which they related statements of the two women was not hearsay and was admissible against appellant. *Morgan v. State,* 596 S.W.2d 220, 221–2 (Tex.Civ.App. —Houston [14th Dist.] 1980, no writ). In our view the present statute (§ 43.04) is so closely related to the previous statute (art. 514) that the authorities cited are applicable in this case as to the admissibility of the statements of the women.

We also hold that the evidence is sufficient to support the finding that appellant controlled, supervised or managed a prostitution enterprise. Section 43.04 provides that a person commits an offense if he knowingly .... controls, supervises or manages a prostitution enterprise. The evidence indicates appellant was in control, or was supervising, or was managing the Golden Girls Studio. He was behind the counter, there was a cash register, he explained the types of services available, he quoted prices, he exhibited pictures of girls who were available, and he stated the prices for the "sessions," and he took the money. His voice was identified as controlling the time. One of the women was quoted as saying appellant was the manager.

"Prostitution" is defined as offering to, agreeing to, or engaging in sexual conduct in return for a fee payable to the actor. "Enterprise" is defined "as a plan or design for a venture or undertaking." Therefore, a "prostitution enterprise" as used in § 43.-04 "means a plan or design for a venture or undertaking in which two or more persons offer to, agree to or engage in sexual conduct in return for a fee payable to them." *Taylor v. State,* 548 S.W.2d 723 (Tex.Cr. App.1977).

Grounds of error three, four and five maintain that the indictment is defective because (3) it does not specify the method of promotion, (4) it failed to specify the method of prostitution allegedly offered by "Golden Girls," and (5) it failed to specify the names of the alleged prostitutes. We find no motion to quash as set out in ground three in the record; any error has been waived.

In *Dovalina v. State,* 564 S.W.2d 378, 382 (Tex.Cr.App.1978) the court quotes from *Dyer v. State,* 283 S.W. 820, 823 (Tex.Cr. App.1925) as follows:

... It has always been the rule that an indictment which charges a rape to have been committed by force, threats, and fraud, is fully sustained by proof of any one of these three methods thus alleged ....

Proof of any one of the acts charged in the indictment is sufficient to sustain a conviction. See *Dovalina, supra,* pp. 382, 383 for additional authorities.

We hold that it was not necessary to allege the names of the prostitutes in the indictment. *Johnson v. State,* 149 Tex. Cr.R. 245, 193 S.W.2d 528, 530 (1946), reversed on other grounds.

We find no fundamental error in the indictment. These grounds of error are overruled.

Judgment of the trial court is affirmed.