TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00842-CR







Penelope Frey, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0965105, HONORABLE JON N. WISSER, JUDGE PRESIDING







 Appellant Penelope Frey was convicted of two counts of aggravated promotion of
prostitution. See Tex. Penal Code Ann. § 43.04 (West 1994). The trial court assessed
punishment at ten years in prison, suspended for six years with a condition of serving 75 days in
the Travis County jail. Appellant challenges the admission of other acts of prostitution as
extraneous offense evidence and argues that the State violated the requirements of Brady v.
Maryland (1) in failing to disclose exculpatory evidence. She also complains that the trial court
admitted evidence in violation of the doctrine of collateral estoppel. We will overrule appellant's
points of error and affirm the trial court judgment.



FACTUAL AND PROCEDURAL BACKGROUND 

 Appellant ran a business called Class Escorts. In 1994, police began an
investigation to determine whether Class Escorts was a prostitution operation. Four women were
implicated as the alleged prostitutes--two in 1994 and two in 1996. Stella Hackney testified that
she had worked for Class Escorts as a prostitute in 1994. Melissa Nelson testified that she too had
worked for Class Escorts in 1994, and she further testified that Class Escorts was a cover for a
prostitution enterprise. Finally, three police officers testified to running a sting operation in
August 1996 which implicated two other women, Lisa Ditrell and Adrienne Scott, in prostitution
activities. The testimony elicited at trial indicated that all four women were being paid to have
sexual relations with clients of Class Escorts.

 The indictment alleged that "on or about" August 2 and August 15, 1996, (2) Frey did
"knowingly own, invest in, finance, control, supervise, and manage a prostitution enterprise that
used at least two prostitutes." Although the indictment set forth dates in 1996, it named Hackney
and Nelson, the two women who had worked for the service in 1994, as the two alleged
prostitutes. At trial, appellant objected to the admissibility of evidence relating to the August 1996
sting operation because the evidence involved two individuals, Ditrell and Scott, who were not
named in the indictment. Appellant asserted that the 1996 incidents were extraneous offenses and
should not be admitted into evidence. Realizing that the indictment named the individuals who
had worked for the service in 1994 rather than in 1996, on the second day of trial, the prosecutor
sought to amend the dates in the indictment. The judge denied the motion, but ruled that the
evidence relating to the 1996 events was admissible as substantive evidence of an ongoing
prostitution enterprise.


DISCUSSION

 In this case, we must decide whether acts of prostitution not specifically set forth
in the indictment are admissible as evidence of the offense of aggravated promotion of prostitution,
or must be excluded, as appellant argues, as extraneous offenses. Because the acts are within the
statute of limitations and are evidence of an ongoing prostitution enterprise, we hold that the trial
court properly admitted the acts as substantive evidence.

 The offense of aggravated prostitution consists of the following elements: (1) a
person (2) knowingly owns, invests, finances, controls, supervises, or manages (3) a prostitution
enterprise (4) that uses two or more prostitutes. See Tex. Penal Code Ann. § 43.04 (West 1994);
State v. Duke, 865 S.W.2d 466, 467 (Tex. Crim. App. 1993). The indictment charged appellant
with owning a prostitution enterprise in 1996 that used two or more prostitutes. The two
prostitutes named in the indictment, Hackney and Nelson, testified at trial that they had worked
for the escort service in 1994. Two other prostitutes, Ditrell and Scott, were arrested in
connection with a sting operation in August 1996. As a result of the sting operation, police
executed a search warrant and seized evidence from appellant's apartment that was introduced at
trial to show that appellant was operating the business out of her apartment. Appellant concedes
that overwhelming evidence was gathered pursuant to the warrant. (3) The State also introduced as
evidence telephone listings for Class Escorts in the Yellow Pages for the period 1992 through
1996, and the testimony of Hackney that appellant had run a prostitution business for ten years.

 In her first point of error, appellant argues that the trial court erred by admitting
the evidence of prostitution activity from August 1996 as substantive evidence of an ongoing
enterprise. The parties agree that the State is not bound by the dates in the indictment as long as
the evidence establishes that the crime occurred prior to the indictment and occurred within the
applicable statute of limitations. See Lemell v. State, 915 S.W.2d 486, 489 (Tex. Crim. App.
1995). Therefore, even though the women named in the indictment worked at Class Escorts in
1994, the State could introduce evidence of activities occurring in 1996 because the events were
well within the three-year statute of limitations. The State could use evidence to prove an ongoing
enterprise, and within the confines of Lemell, the State had the right to structure its enterprise case
as it saw fit. (4) The evidence collected from both 1994 and 1996 was proof of the State's
substantive case of a prostitution enterprise, and not extraneous evidence.

 Furthermore, the State is not required to allege the names of the prostitutes in the
indictment. See Duke, 865 S.W.2d at 468; Brownwell v. State, 644 S.W.2d 862, 865 (Tex. App.
--Tyler 1982, no pet.). Citing Whetstone v. State, appellant urges that "where an unnecessary
matter is descriptive of that which is legally essential to the charged crime, it must be proven as
alleged, even though needlessly stated." 786 S.W.2d 361, 364 (Tex. Crim. App. 1990). (5) 
Admittedly the presence of at least two prostitutes is "legally essential" to the State's case. Here,
the State called Stella Hackney and Melissa Nelson, the individuals named in the indictment, who
testified at trial and thereby addressed the Whetsone requirement. In fact, appellant complains that
by adducing evidence relating to the 1996 sting operation, the State was allowed to introduce too
much evidence; she does not raise an insufficiency claim as to the evidence concerning Hackney
and Nelson. We overrule appellant's first point of error.

 In her second point of error, appellant argues that the State, by introducing evidence
relating to the 1996 sting operation, violated the notice requirements contained in the due process
guarantees of both the United States and Texas Constitutions. A defendant's right to notice
undergirds the indictment requirements. See Sattiewhite v. State, 600 S.W.2d 277, 282 (Tex.
Crim. App. 1979). Appellant points to a series of cases where the courts found a due process
right and a violation of that right. (6) Appellant cites to no case, however, involving the allegation
of an enterprise. More importantly for equitable estoppel purposes, appellant did have
constructive notice of the State's plan to introduce evidence from 1996: (1) the indictment gave
the two specific dates of August 2 and August 15, 1996; (2) the 1996 offenses were listed in the
affidavit accompanying the search and arrest warrant; and (3) appellant was arrested soon after
the August 1996 events occurred. We overrule appellant's second point of error.

 In her third point of error, appellant argues that the State violated Brady v.
Maryland by failing to investigate the outcomes of indictments lodged against two of the four Class
Escort employees, and by failing to provide appellant with copies of exculpatory tapes. Brady
requires the State to relinquish all material, exculpatory evidence. Brady, 373 U.S. at 87. The
State violates this requirement "when a prosecutor 1) fails to disclose evidence 2) which is
favorable to the accused 3) that creates a probability sufficient to undermine the confidence in the
outcome of the proceeding." Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).

 Appellant argues that the State has an affirmative duty to investigate and report the
outcomes of related cases. According to appellant, the State should have inquired into the reasons
for the dismissal of the case against Ms. Ditrell and the not-guilty verdict in the case against Ms.
Scott. (7) Although the State does have an affirmative duty "to provide the defense with any and all
material evidence that is favorable to the defense," (8) that duty does not extend to actively
investigating the case for the defense. The purpose of Brady "is not to displace the adversary
system as the primary means by which truth is uncovered, but to ensure that a miscarriage of
justice does not occur." United States v. Bagley, 473 U.S. 667, 675 (1985). Appellant knew of
both the Ditrell and Scott cases and could have conducted her own investigation. Brady does not
impose a duty on the State to provide facts known to or discoverable by the defendant. See
Havard v. State, 800 S.W.2d 195, 204-05 (Tex. Crim. App. 1989). Appellant's argument that
the State violated Brady by failing to properly investigate the dispositions of the Ditrell and Scott
cases fails the first prong of Thomas.

 Appellant's argument that the State should have provided appellant with copies of
tapes made during the August 1996 sting operation also fails the first prong of the test laid out in
Thomas. The police made audio recordings of both the Ditrell incident and the Scott incident. 
While the heading of appellant's point of error complains of the State's failure to provide appellant
with a copy of the Ditrell tape, the argument discusses only the Scott tape. To the extent appellant
preserved error with regard to the Ditrell tape, we hold that the State did not violate Brady by
failing to provide appellant with a copy of the tape. First, the State is not required to turn over
evidence that it does not have, and therefore the State was not required to (and could not have)
turned over the Ditrell tape. (9) See Thompson v. State, 612 S.W.2d 925, 928 (Tex. Crim. App.
1981). Second, in cases where the State fails to preserve "potentially" useful evidence, there is
no violation of the Due Process Clause without a showing of bad faith on the part of the State. 
See Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988). Finally, appellant proffered no evidence
of bad faith on the part of the State. 

 With regard to the Scott tape, any complaint regarding notice was waived when
appellant's trial attorney affirmatively stated that he had no objection to the admission of the Scott
tape. (10) Even if appellant had properly preserved error, the Scott tape did not contain any
exculpatory or impeaching evidence. Exculpatory evidence is generally that evidence which would
clear or tend to clear the accused from fault or guilt. See County v. State, 812 S.W.2d 303, 313
(Tex. Crim. App. 1989). Impeachment evidence is that which is offered "to dispute, disparage,
deny, or contradict . . . ." See Thomas, 841 S.W.2d at 404. When played before the jury,
appellant's voice could be heard on the tape. The tape corroborated the officer's testimony that
appellant accompanied Scott to the officer's hotel room on the night of the sting operation. 
Therefore, the contents of the tape, rather than being exculpatory, were inculpatory. Appellant's
third point of error is overruled.

 Appellant argues in her fourth point of error that a not-guilty verdict in the case
against Scott barred the State from using the Scott evidence in the case at bar. Because the tape
was admitted without objection, we need not reach this final point of error. In any event,
collateral estoppel is not appropriately applied to the facts of this case. See Ashe v. Swenson, 397
U.S. 436, 443 (1970); Ex parte Tarver, 725 S.W.2d 195, 199 (Tex. Crim. App. 1986).


CONCLUSION

 Having overruled all of appellant's points of error, we affirm the judgment.



 

 Jan Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: March 25, 1999

Do Not Publish



1. 373 U.S. 83 (1963).
2. These dates correspond to the dates Scott and Ditrell were arrested and charged with
prostitution in connection with a sting operation. See Tex. Penal Code Ann. § 43.02 (West 1994).
3. The evidence included business cards, telephones, pagers, digital timers, cash and American
Express checks, a calendar containing names of Class Escorts employees and payments, and an
illustrated dress code. 
4. The court of criminal appeals defined a prostitution enterprise as "a plan or design for a
venture or undertaking in which two or more persons offer to, agree to, or engage in sexual
conduct in return for a fee payable to them." Taylor v. State, 548 S.W.2d 723 (Tex. Crim. App.
1977).
5. See also McCall v. State, 780 S.W.2d 855, 857 (Tex. App.--Houston [14th Dist.] 1989, pet.
ref'd) ("Since establishing the use of two or more prostitutes is a necessary element of the offense,
we find the inclusion of the [names of officers posing undercover as prostitutes] in the indictment
legally essential to the charges of the crime.").
6. Two of the cases revolve around the extraneous offense rule, discussed and dismissed under
the first point of error. Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995) and
Montgomery v. State, 810 S.W.2d 372, 390-93 (Tex. Crim. App. 1990) (incorrectly cited as Ward
v. State). The other two cited cases involve single offenses: Draper v. State, 940 S.W.2d 824
(Tex. App.--Austin 1997, no pet.) (child endangerment); Benson v. State, 661 S.W.2d 708, 713
(Tex. Crim. App. 1982) (burglary). Draper and Benson involve issues of notice concerning the
crime in chief; they do not involve collateral crimes implicated through the enterprise requirement.
7. According to the testimony of a police officer involved in the sting operation that implicated
Ditrell, the case against Ditrell was dismissed; however, the officer was not aware of the reason
for the dismissal. An officer involved in the sting operation that implicated Scott testified that
when Scott arrived at his hotel room on the night of the sting, she was accompanied by Penelope
Frey. The officer testified that Frey asked for the $170 fee. After he paid Frey, she asked to see
his driver's license and inspected the room. Before leaving the room, Frey stated that she believed
the officer was "who he says he is" and told Scott and the officer to "have a good time." The
officer testified that he believed a not-guilty verdict was returned in the Scott prostitution case
because he had given the money to Frey and not directly to Scott, "the female that performed the
act on me." 
8. Curry v. State, 910 S.W.2d 490, 495 (Tex. Crim. App. 1995).
9. An officer involved in the Ditrell sting operation testified that he had not seen the audio tape
made the night of the sting and that it was possible the tape was lost.
10. "It is well settled that an error in admission of evidence is cured where the same evidence
comes in elsewhere without objection; defense counsel must object every time allegedly
inadmissible evidence is offered." Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App.
1984).


in the case
against Scott barred the State from using the Scott evidence in the case at bar. Because the tape
was admitted without objection, we need not reach this final point of error. In any event,
collateral estoppel is not appropriately applied to the facts of this case. See Ashe v. Swenson, 397
U.S. 436, 443 (1970); Ex parte Tarver, 725 S.W.2d 195, 199 (Tex. Crim. App. 1986).


CONCLUSION

 Having overruled all of appellant's points of error, we affirm the judgment.



 

 Jan Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: March 25, 1999

Do Not Publish



1. 373 U.S. 83 (1963).
2. These dates correspond to the dates Scott and Ditrell were arrested and charged with
prostitution in connection with a sting operation. See Tex. Penal Code Ann. § 43.02 (West 1994).
3. The evidence included business cards, telephones, pagers, digital timers, cash and American
Express checks, a calendar containing names of Class Escorts employees and payments, and an
illustrated dress code. 
4. The court of criminal appeals defined a prostitution enterprise as "a plan or design for a
venture or undertaking in which two or more persons offer to, agree to, or engage in sexual
conduct in return for a fee payable to them." Taylor v. State, 548 S.W.2d 723 (Tex. Crim. App.
1977).
5. See also McCall v. State, 780 S.W.2d 855, 857 (Tex. App.--Houston [14th Dist.] 1989, pet.
ref'd) ("Since establishing the use of two or more prostitutes is a necessary element of the offense,
we find the inclusion of the [names of officers posing undercover as prostitutes] in the indictment
legally essential to the charges of the crime.").
6. Two of the cases revolve around the extraneous offense rule, discussed and dismissed under
the first point of error. Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995) and
Montgomery v. State, 810 S.W.2d 372, 390-93 (Tex. Crim. App. 1990) (incorrectly cited as Ward
v. State). The other two cited cases involve single offenses: Draper v. State, 940 S.W.2d 824
(Tex. App.--Austin 1997, no pet.) (child endangerment); Benson v. State, 661 S.W.2d 708, 713
(Tex. Crim. App. 1982) (burglary). Draper and Benson involve issues of notice concerning the
crime in chief; they do not involve collateral crimes implicated through the enterprise requirement.
7. According to the testimony of a police officer involved in the sting operation that implicated
Ditrell, the case against Ditrell was dismissed; however, the officer was not aware of the reason
for the dismissal. An officer involved in the sting operation that implicated Scott testified that
when Scott arrived at his hotel room on the night of the sting, she was accompanied by Penelope
Frey. The officer testified that Frey asked for the $170 fee. After he paid Frey, she asked to see
his driver's license and inspected the room. Before leaving the room, Frey stated that she believed
the officer was "who he says he is" and told Scott and the officer to "have a good time." The
officer testified that he believed a not-guilty verdict was returned in the Scott prostitution case
because he had given the money to Frey and not directly to Scott, "the female that performed the
act on me." 
8. Curry v. State, 910 S.W.2d 490, 495 (Tex. Crim. App. 1995).
9. An officer involved in the Ditrell sting operation testified that he had not seen the audio tape
made the night of the sting and that it was possible the tape was lost.
10. "It is well settled that an error in ad